NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12110


COMMONWEALTH  vs.  JAMES GARVEY.



Suffolk.     December 8, 2016. - May 9, 2017.

Present: Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.[1]


Habitual Offender.  Controlled Substances.  Grand Jury.
    Practice, Criminal, Dismissal, Grand jury proceedings.



Indictments found and returned in the Superior Court
Department on April 1, 2014.

A motion to dismiss was heard by Carol S. Ball, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Zachary Hillman, Assistant District Attorney (Kathleen
Celio, Assistant District Attorney, also present) for the
Commonwealth.
Robert A. O'Meara (Joseph M. Perullo also present) for the
defendant.


BUDD, J.  This case requires us to interpret G. L. c. 279,

§ 25 (a), one provision in the habitual criminal statute, G. L.

---

[1] Justice Botsford participated in the deliberation on this
case prior to her retirement.

c. 279, § 25. Section 25 (a) provides for an enhanced penalty where a defendant has two prior convictions resulting in State or Federal prison sentences of three years or more (qualifying sentences). We conclude that § 25 (a) requires that the underlying convictions arise from separate incidents or episodes of criminal behavior. We also conclude that, in this case, the Commonwealth failed to provide the grand jury with sufficient evidence to support the habitual offender portions of the indictments. We therefore affirm the order dismissing the habitual offender portions of the indictments currently pending against the defendant.

Background. The defendant, James Garvey, was indicted on charges alleging violations of the controlled substances law, G. L. c. 94C. After returning eight indictments relating to the charged drug crimes, the grand jury received evidence concerning the defendant's prior convictions, which the prosecutor introduced to establish probable cause for enhanced penalties to be available in relation to these drug offenses. In particular, the grand jury heard that on March 13, 2002, the defendant was convicted of four offenses, each described in a separate count of a single indictment, and was sentenced to at least three years in State prison on each offense. The offenses were (1) kidnapping, (2) receiving stolen property, (3) possession of a firearm with an obliterated serial number, and (4) unlawful

possession of a firearm. The grand jurors did not, however, hear any evidence as to when these offenses occurred.[2] The grand jury also heard that on December 5, 2002, the defendant was convicted of distribution of a class B substance and conspiracy to violate the controlled substance act, but they did not hear any testimony related to sentencing on those offenses.

Based on the evidence presented relating to the alleged current drug offenses and the prior convictions, the grand jury ultimately voted to indict the defendant for trafficking in 200 grams or more of oxycodone and hydromorphone, G. L. c. 94C, § 32E (c) (4); trafficking in thirty-six grams or more of morphine, G. L. c. 94C, § 32E (c) (2); five counts of possession of a class B substance with the intent to distribute, G. L. c. 94C, § 32A (a), each as a subsequent offender, G. L. c. 94C, § 32A (b); and possession of a class E substance with the intent to distribute, G. L. c. 94C, § 32D (a), as a subsequent offender, G. L. c. 94C, § 32D (b). Each charge also carried

---

[2] Based on the defendant's representation in his brief and on the Commonwealth's statement of the case in connection with the 2002 convictions, which the defendant filed as an exhibit to his motion to dismiss, it appears that the four convictions stemmed from an attempted armed robbery of a store in Arlington in 2001. The defendant and one other person arrived in a stolen motor vehicle. During the robbery, the two threatened the store clerks, locking one of the clerks in the basement. When the police arrived and arrested the robbers, they found two firearms in the store. The Commonwealth does not appear to dispute the defendant's representation that the four prior convictions shared a single date of offense.

habitual criminal and school zone enhancements.  See G. L. c. 279, § 25; G. L. c. 94C, § 32J.

The defendant moved to dismiss the habitual offender portions of the indictments, arguing that the grand jury heard no evidence that his four underlying 2002 convictions arose from different criminal episodes.  A Superior Court judge allowed the motion in a margin endorsement, writing that "to be a[] habitual offender, one must have at least two prior convictions with qualifying sentences resulting from separate, prior criminal episodes" (emphasis in original; quotation omitted).  The Commonwealth appealed from the judge's order.  See G. L. c. 278, § 28E; Mass. R. Crim. P. 15 (a) (1), as appearing in 422 Mass. 1501 (1996).  We transferred the case from the Appeals Court on our own motion.

Discussion.  Section 25 (a) requires a judge to sentence a person found guilty of the underlying felony to the maximum penalty prescribed by law for that felony, where that person has at least two prior convictions with qualifying sentences.  See Commonwealth v. Luckern, 87 Mass. App. Ct. 269, 269-270 (2015).  In reviewing the judge's decision to dismiss the habitual offender portions of the indictments pending against the defendant, our task is to interpret the meaning of this statute.  We address that question first, before considering whether the

Commonwealth presented adequate facts to enable the grand jury to make a probable cause determination.

1. _Statutory interpretation_. We review questions of statutory interpretation de novo. _Commonwealth_ v. _Martin_, 476 Mass. 72, 75 (2016). General Laws c. 279, § 25 (_a_), as amended by St. 2012, c. 192, § 47, provides:

> "Whoever is convicted of a felony and has been previously twice convicted and sentenced to state prison or state correctional facility or a federal corrections facility for a term not less than [three] years . . . shall be considered a habitual criminal and shall be punished . . . for such felony for the maximum term provided by law."

To determine the Legislature's intent, we look to the words of the statute, "construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." _Boston Police Patrolmen's Ass'n_ v. _Boston_, 435 Mass. 718, 720 (2002), and cases cited. "We derive the words' usual and accepted meaning from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." _Commonwealth_ v. _Campbell_, 415 Mass. 697, 700 (1993), quoting _Commonwealth_ v. _Zone Book, Inc._, 372 Mass. 366, 369 (1977). Where the statutory language is clear and unambiguous, our inquiry ends. _Commissioner of Correction_ v. _Superior Court Dep't of the Trial Court for the County of Worcester_, 446 Mass. 123, 124 (2006).

Both the Commonwealth and the defendant contend that the statute is unambiguous, but each interprets it differently. The Commonwealth argues that the plain meaning of the statute requires simply that a defendant have two prior convictions with qualifying sentences in order to be considered a habitual criminal, regardless of whether those convictions stem from the same or different episodes. The defendant, on the other hand, contends that the statute's plain meaning includes a separate-episode element because of the Legislature's use of the word "habitual," in the text of the statute. His argument is that a "habit" is generally defined as "a settled tendency of behavior" or "a behavior pattern acquired by frequent repetition," Webster's Third New Int'l Dictionary 1017 (2002), and that, therefore, a habitual criminal is someone who has committed a certain number of criminal acts on separate occasions.

We do not find § 25 (a)'s meaning, at least in relation to the issue whether the necessary two prior convictions must relate to different criminal incidents, to be as clear and obvious as the Commonwealth and the defendant do. Accordingly, we look to the history of the statute and our past decisions interpreting it, as well as to the rest of the statutory scheme, for guidance.[3] See Commonwealth v. St. Louis, 473 Mass. 350, 355

---

[3] Although Legislative intent controls, we note that G. L. c. 279, § 25 (a), is generally described as a "three strikes"

(2015); Commonwealth v. Galvin, 388 Mass. 326, 329 (1983).  See also Commonwealth v. Hamilton, 459 Mass. 422, 433 (2011) ("we turn to the history of the statute" where there is "lack of clarity").

a.  History of § 25 (a).  The Legislature developed a series of incarnations of repeat offender statutes, beginning in 1818, before enacting what is now § 25 (a).  Contrary to the Commonwealth's assertion, the full statutory history of the habitual criminal statute demonstrates that the requirement of separate criminal episodes has been a crucial assumption underlying the statute's development.

Earlier statutes, including those cited by the Commonwealth, provided for an enhanced penalty upon a second conviction, with further aggravation upon a third.  See St. 1817, c. 176, §§ 5-6; St. 1827, c. 118, §§ 19-20; St. 1832, c. 73, § 1; St. 1833, c. 85, §§ 1-2; St. 1836, c. 4, §§ 17, 20-22; St. 1843, c. 80.  Although there were slight variations among these statutes,[4] the constant concept throughout was the

---

law.  See, e.g., Fletcher v. Dickhaut, 834 F. Supp. 2d 10, 15-16 (D. Mass. 2011) ("The statute operates as a 'three-strikes-and-you're-out' law . . .").  While we do not depend (solely) on the rules of a sport for interpretation, we consider it relevant that most persons using that analogy would also understand that, in baseball, one cannot incur two strikes on a single pitch.

[4] The Commonwealth argues that changes to the statute in the 1830s support its interpretation:  in 1832, the Legislature required prior convictions, sentences, and discharges, but it

Legislature's focus on separate prior incidents.  In 1853, the Legislature repealed the statute.  St. 1853, c. 375.  In 1887, the Legislature enacted the earliest version of the modern statute.  In doing so, it chose to omit the requirements that there be discharges between the commission and conviction of each prior crime, and also to omit an enhanced penalty for second convictions, leaving enhanced penalties only for those criminals who were convicted a third time.  See St. 1887, c. 435, § 1, in amended form at G. L. c. 279, § 25 (a).  See also Commonwealth v. Richardson, 175 Mass. 202, 208 (1900).  When it took these steps, the Legislature added the phrase "habitual criminal" to the statute.  Id. at 202-203.  Against the backdrop of the earlier statutes, with their clear focus on separate and distinct convictions, we understand these changes

_____

removed the discharge requirement in 1836.  Compare St. 1832, c. 73, with St. 1836, c. 4, §§ 17, 20-22.  The 1836 amendment allowed two prior convictions to qualify even where there had not been a term of liberty between any of the crimes.  However, we disagree with the Commonwealth's argument that the 1836 amendment also allowed prior convictions stemming from a single incident to qualify.  In fact, the decision the Commonwealth cites for the concept that "the previous convictions and sentences only need be shown," Commonwealth v. Richardson, 175 Mass. 202, 207-208 (1900), was concerned with whether discharges between sentences on the prior qualifying convictions also must be shown, rather than with determining which convictions could qualify.  Moreover, the Richardson court may well have assumed that qualifying convictions must stem from separate episodes: the facts of that case involved prior convictions that, while tried in the same "term" of court, arose from separate criminal episodes occurring at different times and in different cities.  Id. at 203, 206.

as showing that the Legislature sought to provide again for additional punishment for those criminals who had prior convictions for separate incidents; the intended effect was to limit these additional penalties to those facing a felony conviction after two previous convictions from separate incidents.

This construction of § 25 (a) aligns with earlier decisions interpreting the statute and its prior incarnations.  In these prior cases, although the issue has not been directly raised, we and the Appeals Court have assumed that § 25 (a) requires that the underlying convictions be for "separate" or "distinct" criminal acts committed on different occasions.  In Richardson, 175 Mass. at 208, the court emphasized that through the habitual criminal statute, the Legislature sought both to reform criminals and to protect the public from individuals who "persist[] in crime notwithstanding [prior] discipline."  We held that "two previous distinct convictions" resulting in consecutive sentences could qualify as the underlying convictions resulting in enhanced penalties, id. at 205, and, through the statement of the underlying facts, made clear that the two convictions were for two distinct criminal incidents. See id. at 203.  The Appeals Court has held that concurrent prison sentences also qualify under the statute, but similarly has emphasized that the qualifying convictions were for

"separate and distinct offences."  See Commonwealth v. Hall, 19

Mass. App. Ct. 1004 (1985), S.C., 397 Mass. 466 (1986).  See

also Commonwealth v. Keane, 41 Mass. App. Ct. 656, 660 (1996),

citing Hall, supra.  More recently, where the two prior

convictions stemmed from separate cases in Middlesex County and

New Hampshire, the Appeals Court held that suspended sentences

could qualify as well.  Luckern, 87 Mass. App. Ct. at 273.

Thus, the concept that the prior convictions must stem from

separate episodes has been an implied assumption in our earlier

holdings.

b.  Statutory scheme and effects.  The Commonwealth further

argues that the defendant's interpretation is not supported by a

review of other statutes providing for enhanced penalties.  It

points out that the Legislature has enacted other statutes

punishing repeat offenders[5] and armed career criminals,[6] which

contain language specifically requiring that the prior

conviction be based on distinct offenses; and that, in 2012, the

Legislature added a "violent habitual offender" provision to

---

[5] See, e.g., G. L. c. 266, § 40 ("whoever is convicted . . .
of three distinct larcenies, shall be adjudged a common and
notorious thief, and shall be punished by imprisonment in the
state prison for not more than twenty years or in jail for not
more than two and one half years").

[6] See, e.g., G. L. c. 269, § 10G (b) (providing for enhanced
penalty where defendant has prior convictions, "arising from
separate incidences," for two violent crimes, two serious drug
offenses, or one of each).

§ 25, which also specifies that the prior convictions must relate to "separate and distinct incidents."[7]  See G. L. c. 279, § 25 (b).

The Commonwealth's claim is that the Legislature's inclusion of explicit references to the need for separate incidences in other statutes and especially in another section of § 25 itself, i.e., § 25 (b), implies that the Legislature intentionally excluded the "separate and distinct incident" element from § 25 (a).  We have generally been wary of the maxim of negative implication.  See Halebian v. Berv, 457 Mass. 620, 628 (2010) ("the maxim of negative implication -- that the express inclusion of one thing implies the exclusion of another -- 'requires great caution in its application'" [citation omitted]).  Caution is particularly justified here, where the statutes cited by the Commonwealth vary significantly.  Two of these statutes -- the armed career criminal act and the common and notorious thief statute -- do not aid the Commonwealth's argument, as the language and structure are different from

---

[7] Section 25 (b) provides for enhanced penalties without parole for violent offenders who have two prior convictions from a list of nearly forty violent crimes, and limits prior convictions to "charges separately brought and tried, and arising out of separate and distinct incidents that occurred at different times, where the second offense occurred subsequent to the first conviction."

§ 25 (a).[8]  The third provision, § 25 (b), was added as part of

criminal justice reform legislation enacted in 2012.  See St.

2012, c. 192, § 47.  Those amendments added § 25 (b) in order to

remove the possibility of parole for habitual violent offenders,[9]

id., and broadened § 25 (a) to include suspended and Federal

sentences.  See Luckern, 87 Mass. App. Ct. at 269-270, 273.  See

---

[8] Although the former, G. L. c. 269, § 10G, provides for enhanced penalties for "armed career criminals" with prior convictions, limited to those convictions "arising from separate incidences," the phrase "career criminal" does not appear in the body of the statute.  Thus, unlike § 25 (a), which includes the concept of separate episodes via the phrase "habitual criminal" in the text, § 10G explicitly states "separate incidences" to achieve that meaning.  See generally Commonwealth v. Resende, 474 Mass. 455 (2016).

The latter, G. L. c. 266, § 40, requires "distinct" convictions of specified crimes in the body of the statute, which provides for consolidated sentences for "common and notorious thie[ves]".  However, because it has a completely different purpose and structure from § 25 (a), it is unclear why we should read § 40 as similar enough to affect our interpretation of § 25 (a).  See Commonwealth v. Crocker, 384 Mass. 353, 355 & n.2 (1981) (§ 40 focuses on sentencing and requires consolidated sentence, whereas § 25 [a] must be alleged by indictment and requires separate trial); Commonwealth v. McKnight, 289 Mass. 530, 548 (1935) ("[§ 40] and [its] procedure are quite different from cases where a heavier sentence is imposed [after prior convictions] and where there must be an allegation of the previous conviction as an integral part of the offence").  See also Resende, 474 Mass. at 466 (different structure and language between Federal and State armed career criminal acts implied that State Legislature had different sentencing scheme in mind).

[9] Norton, Patrick Will Sign Sentencing Bill, Expects More Debate Early Next Session (July 31, 2012), http://www. statehousenews.com/news/2012860 [https://perma.cc/HU9P-KL8J] ("bill . . . eliminate[s] parole eligibility for certain three-time violent offenders, a measure that proponents say targets the 'worst of the worst' and will improve public safety").

generally Commonwealth v. Colturi, 448 Mass. 809, 812-813 (2007) (considering purpose of amendments as aid in interpretation). However, because the Legislature did not further amend § 25 (a), there is no indication that it intended to make material changes to the rest of § 25 (a). Luckern, supra at 270. See Colturi, supra at 812 (because we presume Legislature is aware of our prior decisions, "reenact[ment of] statutory language without material change" implies adoption of prior construction). To the extent that § 25 (b) includes more specific language about distinct occurrences, it does not negate this court's and the Appeals Court's prior assumptions about § 25 (a).

Thus, viewing § 25 (a) in light of its history, the statute's proper interpretation aligns with that adopted by the defendant and the motion judge: the two prior convictions with qualifying sentences must have arisen from two separate criminal episodes or incidents.

c. Statute's effects and rule of lenity. Moreover, taking the Commonwealth's proposed interpretation of § 25 (a) to its logical conclusion, the Commonwealth, in its discretion, could seek a habitual offender enhancement for any single incident in which a defendant committed three felonies, by parsing them into two separate prosecutions: one with two substantive charges, and one with both a third substantive charge and a habitual criminal enhancement. See Mass. R. Crim. P. 9 (a), 378 Mass.

859 (1979); E.B. Cypher, Criminal Practice and Procedure § 25:56 (4th ed. 2014) (prosecutor has broad discretion). For example, a prosecutor could split a drug-and-firearm transaction into two cases: the first case charging the defendant with possession of a firearm and possession of a controlled substance with intent to distribute, and the second charging conspiracy and a habitual criminal enhancement, based on the drug and firearm convictions in the first case. See Commonwealth v. Gallarelli, 372 Mass. 573, 576-577 (1977) (discussing separate prosecutions of conspiracy and substantive act). Alternatively, prosecutors who were successful in prosecuting two charges may later learn of new facts that would support a third charge. In both scenarios, there would be two prior convictions and sentences before the defendant was prosecuted for the third charge, even though all three charges arose from a single episode. Thus, the statute's application would depend not on habitual criminal conduct but on how the Commonwealth chooses to prosecute any one criminal episode. This cannot be what the Legislature intended. See Lowery v. Klemm, 446 Mass. 572, 578-579 (2006), quoting Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982) ("we will not adopt a construction of a statute that creates 'absurd or unreasonable' consequences").

Further, to the extent that the Commonwealth's argument raises a valid question about the meaning of § 25 (a), the rule

of lenity supports the interpretation advocated by the defendant and accepted by us. See Commonwealth v. Resende, 474 Mass. 455, 469 (2016) (in sentencing and substantive provisions, where "statute is ambiguous" or legislative intent is unclear, "the defendant is entitled to the benefit of any rational doubt" [citation omitted]). Therefore, we conclude that § 25 (a) calls for enhanced penalties for defendants with two prior convictions with qualifying sentences only where those convictions stem from separate criminal incidents.

2. Probable cause. Citing Commonwealth v. O'Dell, 392 Mass. 445, 451 (1985), and other cases, the Commonwealth argues that even if there is in § 25 (a) a requirement of a separate criminal incident, at the grand jury stage, the Commonwealth only had to present evidence establishing that there were two prior convictions, not that those convictions related to distinct criminal episodes. A court will normally avoid examining the evidence before the grand jury. See Commonwealth v. McCarthy, 385 Mass. 160, 161-162 (1982). However, we will inquire into the proceeding where, as here, the defendant alleges that the grand jury heard no evidence as to a charge or an essential element of a charge.[10] See Commonwealth v. Rex, 469

---

[10] Given the practical reality that a large majority of criminal cases are resolved by guilty pleas, the possibility of requiring no evidence of separate episodes until trial is of particular concern here, because the dismissal of a habitual

Mass. 36, 40-42 (2014) (considering whether grand jury heard "any" evidence as to elements of possession of child pornography).

Here, the grand jury heard no evidence that would allow them to conclude that the defendant's prior convictions stemmed from separate criminal episodes. As described supra, after the grand jury returned indictments on the new substantive drug charges, they heard testimony regarding four of the defendant's prior convictions. However, the grand jury did not hear any information as to the underlying criminal acts. In particular, they heard no information regarding when the offenses took place or how they were related to each other.[11] Therefore, they would not have been able to determine whether the defendant's prior convictions arose out of separate episodes or out of a single criminal incident or spree. As a consequence, without hearing any evidence of separate criminal events, the grand jury could not conclude that there was probable cause to believe that an essential element of the habitual offender statute existed. See Commonwealth v. Humberto H., 466 Mass. 562, 565-566 (2013)

---

offender charge can be a powerful motivator for defendants considering plea agreements.

[11] Because the grand jury heard no testimony that would support a determination that the prior convictions stemmed from separate criminal incidents or episodes, we do not opine whether testimony regarding the underlying scenario, described in note 2, supra, would permit such a finding.

("complaint application must include information to support probable cause as to each essential element of the offense"). Thus, the Commonwealth did not meet its burden for the grand jury properly to find probable cause for the habitual offender portions of the indictments.

Conclusion.  The order of the Superior Court allowing the defendant's motion to dismiss the habitual offender portions of the indictments is affirmed.

So ordered.