NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13465

IN THE MATTER OF AN IMPOUNDED CASE.


     Suffolk.     December 4, 2023. - February 14, 2024.

     Present:  Budd, C.J., Gaziano, Lowy, Kafker, Wendlandt,
                    & Georges, JJ.[1]


          Sealing.  Youthful Offender Act.



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on January 24, 2023.

     The case was reported by Lowy, J.


     Pauline Quirion for the petitioner.
     Nina L. Pomponio, Special Assistant Attorney General (Tonie
J. Ryan also present) for Commissioner of Probation.
     Paul M. Kominers, Kristen R. Gagalis, Tamara S. Wolfson,
Leon Smith, Virginia Benzan, David M. Siegel, & Susan Malouin,
for Citizens for Juvenile Justice & others, amici curiae,
submitted a brief.
     Afton M. Templin, Committee for Public Counsel Services,
for youth advocacy division of the Committee for Public Counsel
Services, amicus curiae, submitted a brief.


_____

     [1] Justice Lowy participated in the deliberation on this case
and authored this opinion prior to his retirement.

LOWY, J.  This case requires us to determine which of the two relevant sources for record sealing -- G. L. c. 276, § 100A (§ 100A), the adult criminal record sealing statute, or G. L. c. 276, § 100B (§ 100B), the juvenile delinquency sealing statute -- governs the sealing of records from youthful offender proceedings.  This appeal arises from the Commissioner of Probation's (commissioner's) denial of the petitioner's request that his youthful offender records be sealed pursuant to § 100B, with the commissioner instead applying the adult criminal record sealing statute, § 100A.  We conclude that § 100B, the juvenile delinquency sealing statute, is the proper statute for the sealing of records of youthful offenders.[2,3]

Background.  In 2012, the petitioner was indicted on four counts of witness intimidation and three counts of felony extortion.  The Juvenile Court ordered pretrial probation with respect to the extortion charges, which were later dismissed. With respect to two of the witness intimidation charges, the Juvenile Court adjudicated the petitioner a youthful offender

---

[2] This opinion exclusively concerns youthful offender records in noncapital cases.  Nothing in this opinion addresses the issue of record sealing as it relates to capital cases.

[3] We acknowledge the amicus briefs submitted by Citizens for Juvenile Justice, the Massachusetts Law Reform Institute, the New England Law CORI Initiative, Northeast Legal Aid, and the University of Massachusetts Law School Human Rights at Home Clinic; and the youth advocacy division of the Committee for Public Counsel Services.

and ordered his commitment to the Department of Youth Services. As to the other two witness intimidation charges, the Juvenile Court adjudicated the petitioner a youthful offender and ordered a seven-year probation sentence. The petitioner sought the sealing of his youthful offender records pursuant to § 100B in late 2021, having satisfied the listed requirements under that statute.[4] The commissioner denied the petitioner's request in early 2022, stating that the petitioner's youthful offender adjudications fell under § 100A, the requirements of which the petitioner had not met.[5] The petitioner appealed from the denial

---

[4] In part, § 100B provides that "[a]ny person having a record of entries of a delinquency court appearance in the commonwealth . . . may . . . request that" his or her record be sealed. Pursuant to § 100B, the commissioner must seal the record of such an applicant provided the applicant satisfies certain listed requirements. The relevant listed requirement of § 100B is that an applicant's court appearances and court dispositions, including any period of supervision or probation, must have been closed at least three years prior to the request. The petitioner satisfies this requirement.

[5] In part, § 100A provides that "[a]ny person having a record of criminal court appearances and dispositions in the commonwealth . . . may . . . request that" his or her record be sealed. Pursuant to § 100A, the commissioner must seal the record of such an applicant provided the applicant satisfies certain listed requirements. The relevant listed requirement of § 100A is that an applicant's court appearances and court dispositions, including any period of custody, for any felony record must have been closed at least seven years prior to the request. Also relevant is that § 100A does not apply in cases of convictions for witness intimidation charges; records of such convictions generally cannot be sealed. See G. L. c. 268, §13B. The petitioner has not satisfied the seven-year waiting period requirement, and his records involve adjudications for witness intimidation charges, which cannot be sealed under § 100A.

of his request by way of a petition in the county court seeking extraordinary relief pursuant to G. L. c. 211, § 3. The single justice reserved and reported the case to the full court without decision.

Discussion. Where a case is reserved and reported by the single justice, we do not need to decide if the case meets the standard for relief under G. L. c. 211, § 3, and instead may proceed to the merits. See Commonwealth v. Whitfield, 492 Mass. 61, 67 n.9 (2023) ("Where the single justice has exercised [his or] her discretion to reserve and report the matter, we proceed to adjudicate the merits"). The question presented by the petitioner's appeal is whether youthful offender dispositions may be sealed in a manner more like adult criminal records under § 100A or delinquency records under § 100B. Because this is a question of statutory interpretation, the standard of review is de novo. See Pembroke Hosp. v. D.L., 482 Mass. 346, 351 (2019). "Legislative intent controls our interpretation of statutes." Commonwealth v. Montarvo, 486 Mass. 535, 536 (2020). Legislative intent can be gleaned by looking "to the words of the statute, construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished" (quotation and citation omitted). Commonwealth v. Garvey, 477 Mass. 59, 61 (2017). If

the statutory language is clear, we conclude our analysis. See Montarvo, supra; Garvey, supra. If the statutory language is ambiguous, however, we then look to sources external to the statute to determine legislative intent. See Matter of E.C., 479 Mass. 113, 118 (2018).

1. Plain text. When interpreting a statute, we look first to the "plain and ordinary meaning" of the statutory language (citation omitted). Velazquez v. Commonwealth, 491 Mass. 279, 281 (2023). See Care & Protection of Rashida, 488 Mass. 217, 225 (2021), S.C., 489 Mass. 128 (2022). If specific terms remain undefined under the statute, we may look to dictionary definitions to understand a term's ordinary meaning. See Commonwealth v. Rossetti, 489 Mass. 589, 593 (2022); Harmon v. Commissioner of Correction, 487 Mass. 470, 479 (2021) ("For terms that are not 'technical,' we construe statutory words and phrases in their 'common and approved usage'" [citation omitted]).

The relevant plain text of § 100A applies the statute to "person[s] having a record of criminal court appearances and dispositions." The relevant plain text of § 100B applies the statute to "person[s] having a record of entries of a delinquency court appearance." Neither statute references youthful offender adjudications -- understandably, given that the category of youthful offender was created in 1996, long

after §§ 100A and 100B were passed.

Where adult criminal records may be sealed under § 100A and delinquency records may be sealed under § 100B, we are unconvinced that the Legislature intended that a category of offenders under age eighteen be deprived of the opportunity to have their records sealed under at least certain circumstances. See Commonwealth v. Rainey, 491 Mass. 632, 642 (2023) ("our respect for the Legislature's considered judgment dictates that we interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation" [citation omitted]).

We assume that the Legislature is aware of existing statutes and thus interpret statutes in harmony with prior enactments to promote a consistent body of law. See Globe Newspaper Co., petitioner, 461 Mass. 113, 117 (2011) ("In interpreting a statute, we presume that when the Legislature enacts a law it is aware of the statutory and common law that governed the matter in which it legislates"); Commonwealth v. Callahan, 440 Mass. 436, 440-441 (2003). See also Montarvo, 486 Mass. at 541 ("The Legislature is presumed to be aware of the prior state of the law as explicated by the decisions of this court" [citation omitted]). Accordingly, we agree with the parties that either § 100A or § 100B permits sealing of youthful offender records.

The petitioner contends that the "criminal court" language of § 100A cannot apply to him because youthful offender proceedings, which occur in the Juvenile Court, are not criminal in nature. Department of Youth Servs. v. A Juvenile, 384 Mass. 784, 786 (1981) ("An adjudication concerning a juvenile is not, of course, a conviction of [a] crime"). The petitioner likewise contends that the phrase "delinquency court" in § 100B is inclusive of youthful offender proceedings because "delinquency" is often understood to encompass a wide range of adjudications of individuals under eighteen years of age. "[D]elinquency" and "delinquency court" are undefined under the statute. Black's Law Dictionary (11th ed. 2019) defines juvenile delinquency broadly as "a juvenile's violation of the law," or more specifically as behavior "by a minor . . . that would be criminally punishable if the actor were an adult, but instead is usu[ally] punished by special laws applying only to minors." Id. at 1038.

As the commissioner notes, however, the Legislature maintains distinct categories of delinquent child and youthful offender proceedings. See G. L. c. 119, § 58 (describing separate procedures for when juveniles are adjudicated "delinquent child[ren]" versus "youthful offender[s]"). Accordingly, while the dictionary definition of delinquency is expansive, it does not square with the Legislature's distinction

between delinquent children and youthful offenders.  In sum, the texts of § 100A and § 100B, neither of which contains any reference to the category of youthful offender or otherwise addresses youthful offender proceedings, are ambiguous on the matter of the sealing of the petitioner's record.

2.  Sources external to the statutes.  Where statutory language is ambiguous, we turn to extrinsic sources to determine the Legislature's probable intent as it pertains to the sealing of youthful offender records.  See Harmon, 487 Mass. at 479. Because neither the adult criminal record sealing statute nor the juvenile delinquency sealing statute mentions youthful offenders, and because we have concluded that the Legislature intended for there to be a path for the sealing of youthful offender adjudications, we are tasked with determining whether, in the context of sealing records, the Legislature intended for youthful offenders to be treated more like other juveniles or more like adults based on extrinsic sources.

The commissioner urges that we look to G. L. c. 119, § 60A (§ 60A), which governs the "[i]nspection of records in youthful offender and delinquency cases," to glean the Legislature's intent with regard to the sealing of youthful offender adjudications.  Under § 60A, the commissioner notes, youthful offender proceedings are open to the public "in the same manner and to the same extent as adult criminal court."  The

commissioner argues that this statute suggests a broader statutory scheme under which youthful offenders are to be treated the same as adult criminal offenders.

In contrast, the petitioner contends that § 60A reveals the Legislature's intent that youthful offenders be treated more like other juveniles than adults. The statute states:

> "The records of a youthful offender proceeding conducted pursuant to an indictment shall be open to public inspection in the same manner and to the same extent as adult criminal court records. All other records of the court in cases of delinquency arising under [§§ 52 to 59], inclusive, shall be withheld from public inspection except with the consent of a justice of such court . . ." (emphasis added).

G. L. c. 119, § 60A. The petitioner argues that the word "other" indicates that the Legislature intended youthful offender proceedings to be a subcategory of delinquency cases.

Moreover, the petitioner directs the court to G. L. c. 119, § 53 (§ 53), which governs the interpretation of § 60A. Section 53 instructs that § 60A "shall be liberally construed so that . . . children brought before the court . . . shall be treated, not as criminals, but as children in need of aid, encouragement and guidance." Section 53 further indicates that "[p]roceedings against children under [§ 60A] shall not be deemed criminal proceedings." We agree with the petitioner that § 60A's likening of youthful offender records to delinquency records by use of the word "other" and, more significantly,

§ 53's overarching mandate that youthful offenders be treated as children in need of aid are more indicative of the Legislature's intent as to the sealing of youthful offender records than § 60A's "public inspection" directive that youthful offender proceedings be open to the public.

More broadly, the commissioner argues that the Legislature provides for separate processes for delinquent children and youthful offenders to hold youthful offenders more accountable for more severe offenses, indicating its intent to treat youthful offenders more like adults than delinquent children. The Commonwealth initiates all delinquency proceedings by way of complaints in the Juvenile Court, whereas the Commonwealth may proceed by indictment in the Superior Court when a juvenile qualifies as a youthful offender. G. L. c. 119, §§ 52, 54. An indictment is required for a juvenile to be adjudicated a youthful offender, which is not the case for delinquent children. See G. L. c. 119, § 54; Commonwealth v. Hampton, 64 Mass. App. Ct. 27, 34 (2005). Should a juvenile be adjudicated a youthful offender as opposed to a delinquent child, a judge may sentence him or her as if he or she had been an adult. See G. L. c. 119, § 58. But see Commonwealth v. Connor C., 432 Mass. 635, 641 (2000) ("At the same time, the provisions of the 1996 amendments did not eviscerate the longstanding principle that the treatment of children who offend our laws are not

criminal proceedings").

The petitioner argues that the Legislature provides for a separate Juvenile Court system to maintain a distinction between minors and adults facing charges, indicating its intent to treat youthful offenders more like delinquent children than adults. While youthful offender adjudications, compared to delinquency adjudications, allow for harsher sentencing for more serious offenses such as firearms offenses or those involving the infliction or threat of serious bodily harm, the distinction between these two kinds of adjudications "affects only sentencing." Commonwealth v. Dale D., 431 Mass. 757, 761 (2000). See G. L. c. 119, § 54. Although youthful offender proceedings are begun by indictment, "the Juvenile Court retains jurisdiction over a juvenile in noncapital cases whether the juvenile is indicted as a youthful offender or proceeded against by complaint." Dale D., supra, citing G. L. c. 263, § 4, and G. L. c. 119, § 58. We find this latter fact persuasive.

As we have consistently recognized, the Juvenile Court is a "forum[] in which, to the extent possible, the best interests of the child serve to guide disposition" (citation omitted). Commonwealth v. Magnus M., 461 Mass. 459, 466 (2012). "[A]n adjudication of a juvenile as a youthful offender subjects him [or her] to more severe penalties, including State prison sentences, see G. L. c. 119, § 58, but it does not transform his

illegal act from an act of delinquency into a crime, and does not change the statutory obligation to treat him 'as far as practicable' as a child 'in need of aid, encouragement and guidance' rather than as a criminal." Commonwealth v. Anderson, 461 Mass. 616, 630, cert. denied, 568 U.S. 946 (2012), citing G. L. c. 119, § 53.

Furthermore, a scheme that forces juveniles who meet the standard for record sealing under § 100B to wait considerably longer before they may pursue record sealing under § 100A, or otherwise accept that their record can never be sealed under § 100A, fails to aid, encourage, and guide children and instead may interfere with their capacity to thrive. See Globe Newspaper Co. v. District Attorney for the Middle Dist., 439 Mass. 374, 384 (2003) ("ready access to a defendant's prior criminal record might frustrate a defendant's access to employment, housing, and social contacts necessary to [his or her] rehabilitation"). The petitioner's records involving witness intimidation charges, for example, could not be sealed pursuant to § 100A, even if he requested sealing after waiting the longer seven-year period. That certain children could never have their records sealed does not accord with the Legislature's intent that the best interests of the child be prioritized in Juvenile Court dispositions. Thus, we agree with the petitioner that the Legislature's maintenance of a separate Juvenile Court

system reflects its intention to treat juveniles tried in that system differently from adults.

After review of the text of §§ 100A and 100B and an analysis of legislative intent as to youthful offender adjudications as revealed in §§ 53 and 60A and more broadly, we conclude that the Legislature intended that, in the context of record sealing, youthful offender adjudications be treated more like delinquency adjudications than adult criminal adjudications.

Conclusion.  In sum, we conclude that, in the absence of further legislative guidance, § 100B's process is most consistent with the directive of the Legislature to aid, encourage, and guide juveniles, including youthful offenders. Accordingly, we hold that it was error for the commissioner to refuse to seal the petitioner's Juvenile Court records pursuant to § 100B, given that the petitioner has satisfied all listed requirements and the statute mandates sealing in such instances. The case is remanded to the county court for the entry of a judgment in favor of the petitioner.[6]

---

[6] Because we allow the petitioner's request for relief pursuant to G. L. c. 211, § 3, we need not address his request for mandamus relief pursuant to G. L. c. 249, § 5.  Likewise, because we decide for the petitioner on statutory interpretation grounds, we need not address the petitioner's arguments whether the commissioner's interpretation of the sealing laws violated the equal protection principles of the Fourteenth Amendment to the United States Constitution and art. 1 of the Massachusetts

So ordered.

---

Declaration of Rights or is otherwise repugnant to the laws of the Commonwealth.