374                                    439 Mass. 374 (2003)

Globe Newspaper Company *v*. District Attorney for the Middle District.

GLOBE NEWSPAPER COMPANY *vs*. DISTRICT ATTORNEY FOR
THE MIDDLE DISTRICT & others.[1]

Suffolk. January 6, 2003. - May 15, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Public Records. Criminal Offender Record Information. Practice, Civil,* Moot
case. *Statute,* Construction. *District Attorney.*

An appeal in a proceeding by a newspaper against six district attorneys seek-
ing a declaration that certain information sought by the newspaper was a
public record within the meaning of G. L. c. 4, § 7, Twenty-sixth, subject
to mandatory disclosure pursuant to G. L. c. 66, § 10, and not prohibited
by the Criminal Offender record Information statute, G. L. c. 6, §§ 167 et
seq. (CORI statute), was not moot because of the newspaper's alleged
unwillingness to pay the costs of the requested record searches, where,
even if financial considerations might ultimately render the newspaper's
present request for records moot, it was appropriate for this court to resolve
the CORI statute issue underlying the ongoing dispute between some
district attorneys and the newspaper. [378-379]

On an appeal by six district attorneys from a declaratory judgment entered in
favor of a newspaper that certain docket number information sought by the
newspaper was a public record within the meaning of G. L. c. 4, § 7,
Twenty-sixth, subject to mandatory disclosure pursuant to G. L. c. 66, § 10
(public records statute), and not prohibited by the Criminal Offender Rec-
ord Information statute, G. L. c. 6, §§ 167 et seq. (CORI statute), this
court concluded that the docket numbers at issue qualified as "chronologi-
cally maintained court records of public judicial proceedings," that such
information did not cease to be a "court" record when distributed to a
district attorney or any other public official, and that allowing members of
the press or public to obtain docket numbers from the district attorneys did
not undermine the purposes of the CORI statute [379-384]; however, this
court noted that the wording of the declaratory judgment must be modified
to limit it to those record requests that are framed entirely in terms of
information that would be available from court or other public or other
public records, as only those requests call for disclosures that are entirely
exempt from the CORI statute [384-386].

CIVIL ACTION commenced in the Superior Court Department on
November 4, 1998.

[1]District attorney for the Suffolk district; district attorney for the Bristol
district; district attorney for the Plymouth district; district attorney for the
Hampden district; and district attorney for the Eastern district.

The case was heard by *Margaret R. Hinkle*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Deidre Roney*, Assistant Attorney General (*Brian J. Dobie*, Assistant District Attorney, with her) for the defendant.

*Jonathan M. Albano* for the plaintiff.

Sosman, J. The defendants, six district attorneys, appeal from a declaratory judgment entered in favor of the plaintiff, Globe Newspaper Company (Globe), that "docket numbers of criminal cases prosecuted in public judicial proceedings, not correlated with defendant-specific information," are public records within the meaning of G. L. c. 4, § 7, Twenty-sixth, that they are subject to mandatory disclosure pursuant to G. L. c. 66, § 10 (public records statute), and that such disclosure is not prohibited by the Criminal Offender Record Information statute, G. L. c. 6, §§ 167 et seq. (CORI statute). We transferred the case to this court on our own motion. On grounds other than those utilized by the judge below, we conclude that the declaratory judgment was correctly entered with respect to the type of record request at issue in this case. However, the wording of that declaration must be modified slightly to avoid erroneous application to other types of record requests.

1. *Facts and procedural background.* The undisputed facts are taken from the parties' cross motions for summary judgment. On July 31, 1998, a reporter for the Globe sent a letter to the Attorney General and to each district attorney in the Commonwealth requesting information pertaining to "cases of municipal corruption" involving "elected or appointed officials or employees of cities and towns" prosecuted between 1993 and June, 1998. Specifically, the reporter sought the docket number, defendant name, municipality, and charge for each such case. In her letter, the reporter agreed to pay search and copying charges up to $75, and, if such charges would exceed that sum, to be notified of the total charges in advance of fulfilling her request.

The Attorney General and the district attorneys for two districts provided the information as requested. Two other district attorneys did not respond to the request at all. The

remaining seven district attorneys responded, but refused to produce the requested information, citing the burden of identifying "public corruption" cases.[2] Six of the district attorneys who refused to produce the requested information also claimed that the CORI statute prohibited them from releasing such information. Counsel for the Globe followed up with an amended request, identifying the charges (by statutory citation) that the Globe viewed as most likely to be at issue in public corruption cases, and suggesting that members of each district attorney's staff "would recall some number of prosecutions of municipal corruption" if any had been brought during the preceding five years. See 950 Code Mass. Regs. § 32.05(4) (1993) ("custodian's superior knowledge of the contents of a governmental entity's files shall be used to assist" in complying with request for public records). As to the prohibitions imposed by the CORI statute, counsel for the Globe pointed to *Globe Newspaper Co.* v. *Fenton*, 819 F. Supp. 89 (D. Mass. 1993), and to a decision of the Superior Court,[3] in support of the Globe's position that the CORI statute did not prohibit release of the requested information. When the district attorneys still refused to comply with the Globe's amended request for records, again citing the CORI statute and the allegedly burdensome nature of the requested record search,[4] the Globe filed the present action for declaratory and injunctive relief.

In its complaint, the Globe sought an injunction requiring the defendant district attorneys to provide it with the requested information, and a declaration that the documents were public records subject to mandatory disclosure under the public records statute, that the CORI statute did not prohibit defendants from disclosing the requested information, and that the Globe

---

[2]The computerized record keeping system in the district attorneys' offices allowed for retrieval of cases involving particular charges but did not identify "municipal corruption" cases. Nor did the system record a defendant's employment or the identity of a defendant's victim, thus preventing the district attorneys from using their computers to locate cases where the defendant had victimized or been employed by a municipality.

[3]Globe Newspaper Co. *vs.* Conte, Suffolk Superior Court No. 95-2743-A (July 28, 1995) (memorandum of decision and order on plaintiff's motion for preliminary injunction).

[4]Three of the district attorneys provided cost estimates for the search and copying of records, ranging from $80,000 to $200,000.

439 Mass. 374 (2003)                                    377

Globe Newspaper Company *v.* District Attorney for the Middle District.

was entitled to receive the information at "actual expense" with copies of documents at "reasonable cost." After stipulating to the dismissal of all claims against three of the defendants (with whom the Globe had apparently resolved the dispute over access to the requested information), the Globe and the remaining six defendants filed cross motions for summary judgment. As framed in its summary judgment motion, the Globe sought declarations that (1) docket numbers of criminal cases are public records under G. L. c. 66, § 10, and G. L. c. 4, § 7, Twenty-sixth; (2) docket numbers were exempt from the restrictions of the CORI statute pursuant to G. L. c. 6, § 172, eighth par.; (3) if the CORI statute prohibited the disclosure of criminal docket numbers it was violative of the First Amendment to the United States Constitution and art. 16 of the Declaration of Rights of the Massachusetts Constitution, and (4) the public records statute and regulations thereunder required custodians of records to make inquiry of their staff to determine the existence of documents responsive to a request for public records.[5]

The judge allowed the Globe's motion in part. Although she did not accept the Globe's argument that the requested docket numbers came within the literal terms of the exceptions to the CORI statute, G. L. c. 6, § 172, eighth par., she concluded that the requested docket number information was closely analogous to each of the categories of information described in those exceptions. For these purposes, the CORI statute operated as an exception to the public records statute, and relying on the principle that exceptions to the public records statute were to be interpreted narrowly, she determined that the defendants had not overcome the presumption that the records were public. She also reasoned that treating the docket number information as a public record in the manner requested by the Globe would not frustrate or be contrary to the purposes of the CORI statute. She declined the Globe's request for a declaration concerning any duty on the part of the district attorneys to make inquiry of staff personnel concerning the existence of records, noting that such

---

[5]The Globe Newspaper Company (Globe) waived its request for any declaration with respect to the reasonableness of the fees that certain of the district attorneys had sought to impose. See note 4, *supra*. It also did not press its claim for injunctive relief.

an inquiry might be reasonable in some circumstances but not in others.[6] Accordingly, she entered declaratory judgment in favor of the Globe on statutory grounds, without reaching the Globe's alternative constitutional claims.

2. *Presence of an actual controversy.* The defendant district attorneys first argue that no declaratory relief should have been granted because the Globe "was unwilling" to pay the costs of search necessary to respond to its record requests[7] means that there is no actual controversy remaining. See G. L. c. 231A, § 1 (granting jurisdiction to make binding declarations "in any case in which an actual controversy has arisen"); *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court*, 421 Mass. 502, 504 (1995), and cases cited. None of the defendants raised this argument below, and the judge therefore committed no error in reaching the merits of the cross motions pending before her.

To the extent that the defendants suggest that the present appeal is moot because of the Globe's alleged unwillingness to pay the costs of the requested record searches, we are unpersuaded. At no time has the Globe indicated any final refusal to pay the fees imposed by the statute. The Globe was confronted with responses from the district attorneys indicating that, even if search costs were paid, they would not produce the records based on their interpretation of the CORI statute. There was thus no reason for the Globe to have agreed to any of the proposed search expenses, or to have made a counterproposal (as to either the fees themselves or to a narrowing of the search parameters) unless and until the CORI statute issue was resolved. While it may be unlikely that the Globe would agree to pay the estimated fees previously announced by certain defendants (see note 4, *supra*), there is no conclusive impasse between the Globe and the defendants on that issue that would automatically moot the Globe's request for public records.

Moreover, the Globe correctly maintains that the present case falls into the category of cases that are capable of repetition yet evading review. The present case is at least the third time that

---

[6]The Globe has not appealed from the judge's denial of that request for declaratory relief, and we therefore do not address it.

[7]See G. L. c. 66, § 10 (*a*) (person requesting public records must pay "actual expense" of search and "reasonable fee" for copying).

the Globe has commenced litigation concerning district attorneys' refusal to produce docket number information, and the third time that certain district attorneys have contended that the CORI statute precludes them from releasing such information.[8] While the defendants argue that any future denial of records on account of the CORI statute may again be litigated and will not escape review, that argument ignores the fact that compliance with a request for public records should ordinarily occur within ten days of that request. See G. L. c. 66, § 10 (*b*). See also *Globe Newspaper Co. v. Commissioner of Educ., ante* 124, 125, 127 (2003), and cases cited. Litigation to vindicate rights of access to public records cannot realistically be completed in that time frame. Even if financial considerations may ultimately moot the Globe's present request for records, it is appropriate that we resolve the CORI statute issue underlying an apparently ongoing dispute between some district attorneys and the Globe.[9]

3. *Status of docket numbers under the CORI statute.* "Every

[8]In *Globe Newspaper Co. v. Fenton*, 819 F. Supp. 89 (D. Mass. 1993), the Globe complained that three district attorneys had refused to provide docket numbers for public corruption cases, and sought a declaration that G. L. c. 6, § 172, was an unconstitutional prior restraint on speech. The Globe obtained a declaration that the statute violated the First Amendment "to the extent that it imposes a sanction for the communication of criminal offender record information contained in a judicial record open to the public at the time of the communication of such information." *Id.* at 101. Two years later, when two district attorneys still refused to provide the Globe with docket numbers for drug forfeiture cases, the Globe obtained a preliminary injunction requiring them to comply with the Globe's public records request for those docket numbers. Globe Newspaper Co. *vs.* Conte, Suffolk Superior Court No. 95-2743-A (July 28, 1995) (memorandum of decision and order on plaintiff's motion for preliminary injunction). There, the Superior Court judge found that the Globe would likely prevail on its claim that release of docket number information was not prohibited by the Criminal Offender Record Information statute, G. L. c. 6, §§ 167 et seq. (CORI statute).

[9]We further note that the various district attorneys and the Attorney General have interpreted their obligations to produce docket number information differently, with some of them turning over the requested docket number information and some of them declining to do so based on the CORI statute. Both of those interpretations cannot be right: there is either a violation of the CORI statute being perpetrated by the Attorney General and those district attorneys who produce docket numbers in response to requests of this nature, or a violation of the public records statute by those district attorneys who decline to produce the docket numbers. The issue needs to be resolved to prevent this recurring violation of one statute or the other.

person having custody of any public record, as defined in [G. L. c. 4, § 7, Twenty-sixth], shall, at reasonable times and without unreasonable delay, permit it . . . to be inspected and examined by any person . . . and shall furnish one copy thereof upon payment of a reasonable fee." G. L. c. 66, § 10 (*a*). The definition of "public records" is broad: "all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose," unless the item is excluded by one of the statute's exemptions. G. L. c. 4, § 7, Twenty-sixth. There is a presumption that a requested record is public, and the burden is on the official refusing to permit inspection "to prove with specificity the exemption which applies." G. L. c. 66, § 10 (*c*). The purpose of these statutes is "to give the public broad access to governmental records." *Worcester Telegram & Gazette Corp.* v. *Chief of Police of Worcester*, 436 Mass. 378, 382-383 (2002). "Because of the statute's presumption in favor of disclosure, we have said that the statutory exemptions must be strictly and narrowly construed." *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 801-802 (1999). See *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 614 (1993), and cases cited.

Here, the defendants rely on the exemption for records "specifically or by necessary implication exempted from disclosure by statute," G. L. c. 4, § 7, Twenty-sixth (*a*), on the theory that the CORI statute specifically prohibits disclosure of such records. The CORI statute governs dissemination of "criminal offender record information," defined as "records and data in any communicable form compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pretrial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release." G. L. c. 6, § 167.

Criminal offender record information may only be disseminated to criminal justice agencies,[10] to agencies and individuals required to have the information by statute, and to individuals and entities approved by the criminal history systems board (based on a determination that the public interest in disseminating the information to such persons "clearly outweighs the interest in security and privacy"). G. L. c. 6, § 172, first par.[11] The Globe is not within any of the categories of persons to whom criminal offender record information may be distributed, and it does not dispute that the information it seeks from the district attorneys would come within the definition of "criminal offender record information."

However, the CORI statute identifies certain records which, notwithstanding that they would come within the definition of criminal offender record information, "shall be public records: (1) police daily logs, arrest registers, or other similar records compiled chronologically, provided that no alphabetical arrestee, suspect, or similar index is available to the public, directly or indirectly; (2) chronologically maintained court rec-

---

[10]"Criminal justice agencies" are defined as "those agencies at all levels of government which perform as their principal function, activities relating to (a) crime prevention, including research or the sponsorship of research; (b) the apprehension, prosecution, adjudication, incarceration, or rehabilitation of criminal offenders; or (c) the collection, storage, dissemination or usage of criminal offender record information." G. L. c. 6, § 167.

[11]In recent years, the Legislature has identified specific agencies and entities who may also have access to criminal offender record information for particular purposes. See G. L. c. 6, § 172B (Department of Social Services and Department of Youth Services may have access for purposes of evaluating foster and adoptive homes); § 172D (Department of Revenue may have access for purposes of establishing paternity or child support obligations); § 172F (office of child care services may have information for purposes of evaluating licensed facilities and programs). Similarly, for various occupations involving the care of children, the elderly, or the disabled, the Legislature has not only allowed the employing entity to obtain criminal offender record information but has required that such employers obtain the information with respect to all prospective employees and volunteers. See G. L. c. 6, § 172C (home health care or personal care attendants); § 172E (employees of long-term care facilities who provide direct personal care to residents); § 172G (Supp. 2002) (employees and volunteers at children's camps); § 172H (Supp. 2002) (employees and volunteers at children's programs); § 172I (Supp. 2002) (employees involved in transporting school children).

ords of public judicial proceedings . . .[12]; (3) published records of public court or administrative proceedings, and of public judicial administrative or legislative proceedings; and (4) decisions of the parole board as provided in [G. L. c. 127, § 130]." G. L. c. 6, § 172, eighth par.[13]

The Globe contends that the docket number information it seeks comes within the first three exceptions to the CORI statute and is therefore a "public record" subject to disclosure under the public record statute. We agree that the docket numbers at issue qualify as "chronologically maintained court records of public judicial . . . proceedings," *id.*, and therefore need not consider whether any of the other exceptions would be applicable.[14] Docket numbers are assigned chronologically and maintained by courts as part of their court records, criminal proceedings against adult defendants are public proceedings, and docket number information thus falls squarely within the second listed exception to the CORI statute.

The defendants maintain, however, that such information in their hands is no longer a "court" record, as they are district attorneys, not courts. In essence, they contend that the term "court records" as used in this exception includes a requirement that the record be physically located at a "court" and thus applies only to the precise copy of the record that is at the court house. We disagree. A record does not cease to be a "court" record when it is distributed to the parties to a case, here, to the district attorney prosecuting the case. It retains its original character as

---

[12]A further proviso in G. L. c. 6, § 172, eighth par., limiting the availability of court records ("provided that no alphabetical or similar index of criminal defendants is available to the public, directly or indirectly") has been held unconstitutional. See *Globe Newspaper Co.* v. *Fenton, supra* at 100-101. As a result of that decision, the public has access to court clerks' alphabetical indices of defendants' names and may thereby obtain access to court records concerning an individual defendant.

[13]By way of regulation, the criminal history systems board has created additional specific exceptions allowing release of criminal offender record information. See 803 Code Mass. Regs. §§ 2.04(5), 4.02, 5.03, 6.06 (1993). See also *Bellin* v. *Kelley,* 435 Mass. 261, 265-269 (2001) (upholding board's authority to promulgate such regulatory exceptions). The Globe's request for docket numbers does not fit within any of these regulatory exceptions.

[14]Because we agree with the Globe on the interpretation of this exception to the CORI statute, we also need not reach the Globe's alternative argument challenging the CORI statute on constitutional grounds.

a "court" record, and hence a "public record," without regard to which entity has a copy. Put differently, if the item sought is a court record that could be obtained from the clerk's office, it is a public record, and it may be obtained from any other government official who also happens to have a copy of that same public record.[15] See G. L. c. 4, § 7, Twenty-sixth (definition of "[p]ublic records" includes documents "made or received by" public officer or employee). The court record's status as a public record does not depend on the identity of the custodian from whom that public record is sought.

To the extent that there is any ambiguity whether the term "court records" refers only to those record copies that are physically located within a court house, that ambiguity must be resolved in favor of disclosure. The judge correctly perceived the hierarchy of the public records statute and the CORI statute. The CORI statute operates as an exception to the definition of "[p]ublic records," G. L. c. 4, § 7, Twenty-sixth (*a*), and, as an exception, it must be construed narrowly. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 801-802 (1999); *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 614 (1993), and cases cited. Consistent with that principle, the term "court records," which operates as an exception to the exception, must be construed broadly in favor of disclosure. Absent clear indication from the Legislature that the exception for "court records" was intended to require persons seeking such records to obtain them solely from court clerks' offices, we should not engraft such a requirement onto that exception. Rather, we treat the exception

---

[15]On constitutional grounds, the Federal court has held that "nothing in the CORI statute may be held to impose liability for the communication of information otherwise available at the time of the communication in a judicial record to which the public has access" and that it would violate the First Amendment to impose a sanction "for the communication of criminal record information contained in a judicial record open to the public at the time of the communication of such information." *Globe Newspaper Co.* v. *Fenton, supra* at 100, 101. The defendants correctly maintain that nothing in the final decree in that case requires them to disclose information in court records. That case, however, was a constitutional challenge to the CORI statute, not an interpretation of the public records statute. It is the public records statute that requires the defendants to disclose anything that qualifies as a "public record." G. L. c. 66, § 10 (*a*).

for "court records" as applying to all copies of those same records in the possession of any public official, making them "public records" without regard to their physical location.

We also agree with the judge below that allowing members of the press and the public to obtain docket numbers from the district attorneys does not undermine the purposes of the CORI statute. The CORI statute is intended to protect privacy and to promote the rehabilitation of criminal defendants, recognizing that ready access to a defendant's prior criminal record might frustrate a defendant's access to employment, housing, and social contacts necessary to that rehabilitation. Requests for docket numbers of particular types of cases, not being framed with reference to any named defendant, do not subvert the CORI statute. The CORI statute is not intended to shield officials in the criminal justice system from public scrutiny. Evaluation of a district attorney's performance of necessity involves review of that district attorney's cases, e.g., the types of cases prosecuted, the results achieved, the sentences sought and imposed. Requiring district attorneys to respond to public records requests for docket numbers of particular types of cases prosecuted by their offices facilitates that review without undermining the CORI statute.

4. *Wording of the declaration.* The judge entered a declaration that "docket numbers of criminal cases prosecuted in public judicial proceedings, not correlated with defendant-specific information, are public records under G. L. c. 4, § 7, Twenty-sixth, that they are subject to mandatory disclosure under G. L. c. 66, § 10, and that their disclosure is not prohibited by the CORI statute." For purposes of the type of record request before her, that declaration was accurate.[16] However, applied broadly to all types of requests for docket numbers, the declaration as worded would not be accurate.

While docket numbers are court records, responses to requests for docket number information about particular types of cases inherently reveal information beyond the docket numbers

[16]The Globe has not challenged the limitation the judge added to the requested declaration, namely, that the request for docket numbers "not [be] correlated with defendant-specific information." We therefore need not address whether that limitation is necessary.

themselves. By definition, the list of docket numbers produced in response to a request also reveals that each case on that list conforms to whatever search criteria were employed consistent with the terms of that request (e.g., that the case involved a particular charge, or was handled by a particular assistant district attorney, or resulted in a prison sentence of a particular length). There is no violation of the CORI statute when the search specifications consist of information that would also be revealed on the court's records accessible to the public. The declaration entered here arose from a request that was framed in terms of information that would presumably appear on the court's records, i.e., docket numbers for cases involving particular types of crimes and against municipalities as victims. However, a request for docket numbers correlated with information that is *not* in the court's records or any other public record effectively calls for the release of information that would not be a public record, as the resulting list of docket numbers would inform the recipient that each case on that list had a particular attribute that could not have been ascertained from public records. A district attorney's office has considerable information about its cases and defendants, not all of which is ultimately revealed on the court's records, e.g., information about a defendant's personal background. Such information constitutes criminal offender record information, and it would not be exempt from the CORI statute as a "court record." Its disclosure would thus still be prohibited by the CORI statute.

We therefore conclude that the wording of the declaratory judgment must be modified to limit it to those record requests that are framed entirely in terms of information that would be available from court or other public records, as only those requests call for disclosures that are entirely exempt from the CORI statute. The case is remanded to the Superior Court for modification. The declaration should be amended to read as follows: "Docket numbers of criminal cases prosecuted in public judicial proceedings, correlated with information that is also available from court or other public records, but not correlated with defendant-specific information, are public records under G. L. c. 4, § 7, Twenty-sixth, subject to mandatory disclosure

under G. L. c. 66, § 10, and their disclosure is not prohibited by the CORI statute, G. L. c. 6, §§ 167 et seq."

*So ordered.*