NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12722

ATTORNEY GENERAL  vs.  DISTRICT ATTORNEY FOR THE PLYMOUTH DISTRICT & others.[1]


Suffolk.     November 5, 2019. - March 12, 2020.

Present: Gants, C.J., Lenk, Gaziano, Lowy, & Budd, JJ.


Public Records. Criminal Offender Record Information. District Attorney.



Civil action commenced in the Superior Court Department on November 23, 2016.

The case was heard by Rosemary Connolly, J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.


Thomas R. Kiley, Special Assistant Attorney General (Meredith G. Fierro also present) for the defendants.
Carrie Benedon, Assistant Attorney General, for the plaintiff.
Rebecca Jacobstein, Committee for Public Counsel Services, & Lindsay M.K. Custer, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

---

[1] District Attorney for the Middle District and District Attorney for the Cape and Islands District.

GANTS, C.J.  A reporter for Boston Globe Media Partners, LLC (Globe), made a public records request pursuant to G. L. c. 66, § 10 (public records law) to each of the offices of the Commonwealth's eleven district attorneys and to the office of the Attorney General for information stored in an internal electronic case database maintained by each of these offices (database).  Specifically, the Globe sought data tables containing the following twenty-three categories of information for each criminal case tracked by the district attorneys and the Attorney General in their databases:

"[1] Case ID Number . . . ; [2] Offense Date; [3] Case filing Date; [4] Docket number; [5] Court name where the case was handled; [6] Criminal count number; [7] Charge/crime Code . . . ; [8] Charge/crime Description . . . ; [9] Charge/crime Type . . . ; [10] Department that filed the charge; [11] Way charge was initiated (Ex:  grand jury indictment, filed by police . . . etc.); [12] Defendant ID Num (Internal tracking number used by DA's office to identify defendant); [13] Defendant Race/Ethnicity; [14] Defendant Gender; [15] Judge's Name who handled disposition; [16] Disposition Date; [17] Disposition Code; [18] Disposition Description; [19] Disposition Type; [20] Disposition/sentence[] recommended by prosecutor for each charge; [21] Sentence Type; [22] Sentence Description; [23] Case status."

All of the offices complied with the request except for those of the district attorneys for the Plymouth District, the Middle District, and the Cape and Islands District (the district attorneys).  The Globe appealed to the supervisor of records (supervisor) to determine whether the requested information sought from the databases are public records that must be

disclosed under the public records law. The supervisor determined that the information constitutes public records and ordered the district attorneys to produce the requested data. The district attorneys declined to do so, and the supervisor referred the matter to the Attorney General, who commenced an action seeking a declaration that the requested data are public records. A Superior Court judge allowed the Attorney General's motion for summary judgment and entered a judgment declaring that the Globe's request seeks public records that must be disclosed. We granted the district attorneys' motion for direct appellate review.

On appeal, the district attorneys argue that we should reverse the declaratory judgment for two reasons: first, that under G. L. c. 4, § 7, Twenty-sixth (a), these records are "specifically or by necessary implication exempted from disclosure" under the Criminal Offender Record Information Act, G. L. c. 6, §§ 167-178B (the CORI act); and second, that the Globe's request requires them not merely to disclose existing records but to create a computer program to extract the data and create a new report, which exceeds what is required under the public records law.

We conclude that the data sought by the Globe from the district attorneys would be "specifically or by necessary implication exempted from disclosure" under the CORI act if the

individuals whose cases were tracked by this data could be directly or indirectly identified, because a criminal history of these individuals could then be compiled from this data that may be more extensive than what members of the public are permitted to obtain under the CORI act.  We also conclude that if the court case docket number (docket number) for each case were segregated and redacted from the remaining categories of information, these individuals could not be directly or indirectly identified from this data.  We also conclude that a request such as this, which requires the extraction of categories of information from an existing database, does not impose burdens on public record holders that exceed what is required under the public records law.  We therefore affirm the judgment only in part and declare that the district attorneys must disclose to the Globe twenty-two of the twenty-three categories of information requested, excising from the disclosure the docket number for each case requested.[2]

Statutory background.  This case requires us to attempt to harmonize the language and legislative purpose of two statutes: the public records law, G. L. c. 66, § 10, and the CORI act, G. L. c. 6, §§ 167-178B.

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

1. _The public records law_. The public records law, G. L. c. 66, § 10, governs the public's right to access records and information held by State governmental entities. Under the public records law, anyone has the right to access or inspect "public records" upon request. G. L. c. 66, § 10 (a). "The primary purpose of the [public records law] is to give the public broad access to governmental records." Worcester Tel. & Gazette Corp. v. Chief of Police of Worcester, 436 Mass. 378, 382-383 (2002). In enacting the public records law, the Legislature recognized that "[t]he public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner," Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 158 (1979), and that "greater access to information about the actions of public officers and institutions is increasingly . . . an essential ingredient of public confidence in government," New Bedford Standard-Times Publ. Co. v. Clerk of the Third Dist. Ct. of Bristol, 377 Mass. 404, 417 (1979) (Abrams, J., concurring).

"Public records" are broadly defined as "all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee" of any Massachusetts governmental entity. G. L. c. 4, § 7, Twenty-sixth. But "[n]ot every record

or document kept or made by [a] governmental agency is a 'public record.'" Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 454 (2007). The Legislature has identified twenty categories of records that fall outside the definition of "public records" and are consequently exempt from disclosure under the public records law. G. L. c. 4, § 7, Twenty-sixth (a)-(u). Here, only one exemption has been claimed by the district attorneys: G. L. c. 4, § 7, Twenty-sixth (a) (exemption [a]) excludes records from disclosure where they are "specifically or by necessary implication exempted from disclosure by statute."

A public record holder may invoke exemption (a) as the basis for withholding requested records where another statute -- the "exempting statute" -- expressly prohibits disclosure. See, e.g., Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539, 544 n.5 (1977), citing G. L. c. 167, § 2 (copies of bank examination reports "shall be furnished to such bank for its use only and shall not be exhibited to any other person . . . without the prior written approval of the commissioner"); G. L. c. 111B, § 11 (alcohol treatment records "shall be confidential"); G. L. c. 41, § 97D (all reports of rape or sexual assault "shall not be public reports"). Alternatively, a record may be withheld where the exempting statute protects the record from disclosure by "necessary implication," such as where

the exempting statute prohibits disclosure as a practical matter.  See, e.g., Champa v. Weston Pub. Schs., 473 Mass. 86, 91 n.8 (2015) (Federal statute "does not expressly prohibit disclosure of 'education records,' but it does condition receipt of Federal funds on the nondisclosure of education records").

Under the public records act, "a presumption shall exist that each record sought is public and the burden shall be on the defendant agency or municipality to prove, by a preponderance of the evidence, that such record or portion of the record may be withheld in accordance with state or federal law."  G. L. c. 66, § 10A (d) (1) (iv).  Therefore, the burden rests with the district attorneys to prove that the CORI act specifically or by necessary implication exempts the requested records from disclosure.

2.  The CORI act.  First enacted in 1972, the CORI act centralized the collection and dissemination of criminal record information in the Commonwealth.  St. 1972, c. 805.  See New Bedford Standard-Times Publ. Co., 377 Mass. at 413.  It created a unified management system for all criminal record information, allowing, for the first time, the compilation of a comprehensive State criminal history for each offender (CORI report).  St. 1972, c. 805, § 1.  It also strictly limited dissemination of those State-compiled criminal histories to criminal justice agencies and other entities specifically granted access by

statute.  Id.  By imposing these restrictions, the Legislature intended to address the need of criminal justice agencies to access criminal offender information while "embedded[ing] in the statutory public policy of Massachusetts" its "interest in promoting the rehabilitation and reintegration into society of former criminal defendants."  Globe Newspaper Co. v. Fenton, 819 F. Supp. 89, 97 (D. Mass. 1993) (Fenton).

In the following years, groups such as employers, victim advocates, and the press began to voice dissatisfaction with the inaccessibility of criminal record information and challenged the constitutionality of the CORI act and related provisions. See, e.g., New Bedford Standard-Times Publ. Co., 377 Mass. at 405; Fenton, 819 F. Supp. at 90; Globe Newspaper Co. v. Pokaski, 684 F. Supp. 1132, 1132 (D. Mass. 1988), aff'd in part and reversed in part, 868 F.2d 497 (1st Cir. 1989) (challenging constitutionality of criminal record sealing under G. L. c. 276, § 100C).  After years of debate and gradual modification, see, e.g., St. 1990, c. 319; St. 1977, c. 691, the CORI act was substantially revised in 2010 by the enactment of CORI reform. St. 2010, c. 256. See Massing, CORI Reform --Providing Ex-Offenders with Increased Opportunities without Compromising Employer Needs, 55 Boston Bar J. 21, 21 (2011) (discussing statutory history).

CORI reform created a new agency, the Department of Criminal Justice Information Services (DCJIS), to manage "data processing and data communication systems . . . designed to ensure the prompt collection, exchange, dissemination and distribution of such public safety information as may be necessary for the efficient administration and operation of criminal justice agencies and to connect such systems directly or indirectly with similar systems in this or other [S]tates." G. L. c. 6, § 167A (c).  See St. 2010, c. 256, § 8 (c).  In turn, DCJIS developed iCORI, defined as "[t]he [I]nternet-based system used in the Commonwealth to access CORI and to obtain self-audits."  803 Code Mass. Regs. § 2.02 (2017).

CORI reform also significantly expanded the availability of CORI reports.  See St. 2010, c. 256, § 21.  Where before only criminal justice agencies and a narrow group of statutorily authorized employers and government agencies could access CORI reports, CORI reform created a tiered system of access to CORI based on the identity of the requestor.  See id.  See also 803 Code Mass. Regs. § 2.05(2) (2017).  For example, under the tiered system, "[c]riminal justice agencies may obtain all criminal offender record information, including sealed records, for the actual performance of their criminal justice duties." G. L. c. 6, § 172 (a) (1).  Members of the general public have much more limited access.  In the tier of "open access," any

member of the general public, upon written request, may obtain a limited amount of CORI about a person:  felony convictions from the last ten years that were punishable by imprisonment of five years of more, all felony convictions from the past two years, misdemeanor convictions from the past year, and information regarding custody status and placement if the person is incarcerated or on probation or parole.  G. L. c. 6, § 172 (a) (4).[3]  The commissioner of DCJIS also may provide access to CORI to persons other than those entitled to obtain access where he or she finds that such dissemination "serves the public interest."  G. L. c. 6, § 172 (a) (6).

CORI reform also substantially decreased the waiting period for automatic sealing of criminal records under G. L. c. 276, § 100A, and expanded the availability of discretionary sealing to continuances without a finding.[4]  See St. 2010, c. 256, § 128;

---

[3] In the tier of "standard access," prospective employers and landlords who make a request for a CORI report from the Department of Criminal Justice Information Services (DCJIS) regarding prospective employees or tenants receive more information than the general public but less than criminal justice agencies:  pending criminal charges, including cases continued without a finding that have yet to be dismissed, and, unless sealed, misdemeanor convictions from the last five years and felony convictions from the last ten years.  G. L. c. 6, § 172 (a) (3).

[4] The waiting period to seal misdemeanor convictions was reduced from ten years to five years, and for felony convictions, from fifteen years to ten years.  See St. 2010, c. 256, § 128; Commonwealth v. Pon, 469 Mass. 296, 306 n.17 (2014).  In 2018, as part of the criminal justice reform bill,

Commonwealth v. Pon, 469 Mass. 296, 305-306 (2014). "These reforms, coupled with the procedural protections aimed at minimizing discrimination in the hiring process, strongly indicate that the Legislature was concerned with the collateral consequences of criminal records and sought to make sealing broadly available to individuals whose criminal histories or records no longer presented concerns of recidivism." Pon, supra at 306.

Despite the limitations imposed by the CORI act on the scope of information that members of the general public, employers, and landlords are entitled to receive in a CORI report, the CORI act does not prohibit anyone from attempting to obtain more information about the criminal history of a particular individual from court records or from police daily logs or arrest registers, which are presumptively public.[5]  See

---

the waiting period to seal misdemeanor convictions was further reduced from five years to three years, and for felony convictions, from ten years to seven years.  See St. 2018, c. 69, § 186.

[5] We say that these records are presumptively public because court records involving adults or juveniles adjudicated as adults may be impounded, sealed, or expunged, juvenile court records are closed to the public, entries regarding juvenile arrests must be removed from police logs, and police logs must be redacted where an offense is expunged.  See Republican Co. v. Appeals Court, 442 Mass. 218, 223 (2004) (court records can be impounded and made unavailable for public inspection upon showing of good cause); G. L. c. 276, §§ 100A, 100B, 100C (sealing of certain probation files and court records); G. L. c. 276, §§ 100F, 100G, 100H, 100J (expungement eligibility and

G. L. c. 6, § 172 (m) (declaring that "chronologically maintained court records of public judicial proceedings" and "police daily logs, arrest registers, or other similar records compiled chronologically" are "public records").  Those who are frustrated by the amount of information available to them in a CORI report and want to obtain a complete criminal history can go to the clerk's office in every court house, search for every case under the individual's name, and review the court file. They would be limited in this endeavor only by the practical constraints of time and expense; obtaining someone's criminal history in this piecemeal fashion does not violate the CORI act. See G. L. c. 6, § 178.[6]

Discussion.  We now turn to our review of the motion for summary judgment.  "Our review of a motion judge's decision on summary judgment is de novo, because we examine the same record

procedures); G. L. c. 41, § 98F (entries regarding juvenile arrests); G. L. c. 276, § 100L (police logs must be redacted where case is expunged).

[6] It would, however, be a crime for a member of the public, under false pretenses, to obtain from DCJIS or a law enforcement agency a more comprehensive criminal history regarding the individual than what is available under "open access."  See G. L. c. 6, § 178.  Moreover, CORI reform made it a crime for an employer to request that a prospective employee provide the employer with his or her CORI report.  See G. L. c. 6, § 172 (d).  Because individuals are authorized to receive a full and unrestricted CORI report regarding their own criminal history, G. L. c. 6, § 175, this provision ensures that employers can access only that information to which they are statutorily entitled.

and decide the same questions of law." Kiribati Seafood Co. v. Dechert LLP, 478 Mass. 111, 116 (2017).

1. Exemption (a): "specifically or by necessary implication" of the CORI act. The district attorneys assert that under exemption (a) the Globe's requested categories of information from the databases are "specifically or by necessary implication" exempted from disclosure under the CORI act. In determining whether records are "specifically or by necessary implication" exempted from disclosure, we must exercise considerable caution. "Because of the [public records act's] presumption in favor of disclosure, we have said that the statutory exemptions must be strictly and narrowly construed." Globe Newspaper Co. v. District Attorney for the Middle Dist., 439 Mass. 374, 380 (2003) (Middle District), quoting General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 801-802 (1999). We have also said that, where the exemption from disclosure derives from the CORI act, "it must be construed narrowly." Middle District, 439 Mass. at 383.

The Attorney General contends that the information sought is not CORI as defined in G. L. c. 6, § 167, and therefore not "specifically or by necessary implication exempted from disclosure" under the CORI act, because the Globe did not request the names of the defendants in the database. It is certainly true that the definition of CORI makes clear that it

includes only records and data about "identifiable" individuals, and that "[c]riminal record information shall not include . . . files in which individuals are not directly or indirectly identifiable."  G. L. c. 6, § 167.  But the absence of defendants' names in the data request does not mean that the individuals whose data are in the district attorneys' databases cannot be identified.

Where the data request includes docket numbers, the identity of the individuals in the requested databases would be "indirectly identifiable."  As set forth in Rule 5(a)(2) of the Uniform Rules on Public Access to Court Records (Uniform Rules), Mass. Ann. Laws Court Rules, Trial Court Rules, at 1007 (LexisNexis 2018), any person who knows the docket number of a criminal case can learn the name of the criminal defendant in that case through the Trial Court's public Internet portal. This information can be learned by anyone at any place and at any time; all that is required is access to a computer.

Once a person in possession of the requested database knows the name of the criminal defendant from the docket number, that person would be able to link that name to the defendant's internal identification number -- which is one of the twenty-three categories of information requested.  The database could then be searched for all cases with that same defendant

identification number, and a criminal history of the defendant could be compiled.

To be sure, this criminal history would be less comprehensive than that compiled by DCJIS, because it would include only the cases prosecuted by a particular district attorney's office rather than all criminal cases in the Commonwealth in which the defendant was arraigned.[7]  But if, as here, the requestor seeks to obtain the same categories of information from all the district attorneys and from the Attorney General, the requestor would be able to cobble together something akin to a Statewide criminal history of the defendant that may provide substantially more information about the defendant's criminal history than a member of the public could obtain through a DCJIS CORI query.

Additionally, obtaining an identifiable individual's criminal history through a public records request strips that individual of statutory protections granted in CORI reform.  For example, G. L. c. 6, §§ 167 and 172 (g), allow any individual, without a fee, to obtain through a self-audit the names of all persons and entities, other than criminal justice agencies, that have made queries to request that individual's CORI.  But if a

---

[7] The record before us does not indicate whether each of the district attorneys uses the same defendant identification number for an individual.

criminal history could be compiled through a public records request, that individual would not be able to learn that someone had obtained his or her criminal history. Moreover, in contrast with those persons who receive an individual's criminal history through a DCJIS request, there is no legal prohibition against further dissemination of a criminal history compiled through a public records request. Compare G. L. c. 6, § 172 (f) ("A requestor shall not disseminate criminal offender record information except upon request by a subject" of query).

The Legislature, when it enacted CORI reform and granted broader access to CORI reports while simultaneously enhancing protections for individuals with criminal records, sought to "recalibrate the balance between protecting public safety and facilitating the reintegration of criminal defendants by removing barriers to housing and employment." Pon, 469 Mass. at 307. In light of exemption (a), the public records law cannot be interpreted to permit members of the general public to make an end run around the CORI restrictions by allowing them to generate criminal histories of individuals through public records requests to prosecutors, and thereby obtain a more extensive criminal history than they would receive through a DCJIS query.

The Trial Court sought to avoid a comparable end run around the CORI statutory scheme when it crafted limitations on the use

of its public Internet portal under the Uniform Rules.  Under those rules, a member of the general public may obtain electronic access to the name of the defendant and the court docket only if he or she knows the docket number of the case; one cannot conduct a search of a defendant by name and obtain the dockets and case information for all the criminal cases that relate to that defendant.  See Rule 5(a)(2) of the Uniform Rules.  The rules committee of the Trial Court reasoned that "[i]f the Trial Court were to provide the public with the ability to remotely search criminal cases by a defendant's last name, which could essentially reveal a defendant's entire criminal history, it could thwart the careful balance between access and privacy struck by the Legislature in enacting the CORI statute."  Notes to Rule 5(a)(2) of the Uniform Rules, Mass. Ann. Laws Court Rules, Trial Court Rules, at 1009 (LexisNexis 2018).  See id., quoting State House News Service, Nov. 18, 2009 (statement of Sen. Creem) (intent of CORI reform was to strike "a great balance . . . between providing information that the public has a right to know and protecting people's privacy").  The rules committee also noted that the limitations imposed on public access to criminal history records by the CORI act and the protections imposed by the act against dissemination of those records by requestors "could not reasonably be maintained if a defendant's criminal history could

be pieced together through a search on the Trial Court's website." Notes to Rule 5(a)(2) of the Uniform Rules, supra. See New Bedford Standard-Times Publ. Co., 377 Mass. at 415 (court records that "aggregate information concerning the criminal history of an individual" may "threaten the privacy interests the [CORI act] seeks to protect").

There is another important reason, rooted in CORI and criminal justice reform, to exempt docket numbers from disclosure in this case -- to avoid frustrating the legislative purpose regarding the sealing and expungement of cases, because "[s]ealing is a central means by which to alleviate the potential adverse consequences in employment, volunteering, or other activities that can result from the existence of such records." Pon, 469 Mass. at 307, citing G. L. c. 276, §§ 100A, fifth par., and 100C, fourth par.

Under G. L. c. 276, § 100A, "[a]ny person having a record of criminal court appearances and dispositions in the commonwealth on file with the office of the commissioner of probation" may request that the commissioner seal the file. If the requestor satisfies all the statutory conditions, "[t]he commissioner shall comply with the request." See id. (setting forth statutory conditions). In addition, under G. L. c. 276, § 100C, the commissioner shall seal the record of court appearances and dispositions recorded "[i]n any criminal case

wherein the defendant has been found not guilty by the court or the jury, or a no bill has been returned by the grand jury, or a finding of no probable cause has been made by the court." In all such sealed cases, the commissioner must notify the clerk of the court where the proceeding took place of the sealing, who shall seal the court record. G. L. c. 276, §§ 100A, 100C. Where the record is sealed, if anyone other than a law enforcement agency searches for the court record, the court shall report "that no record exists." G. L. c. 276, § 100C.

Under G. L. c. 276, §§ 100I and 100K, with respect to some criminal offenses that occurred before the offender was twenty-one years of age, under certain circumstances, the person may be eligible for expungement of the criminal record for a particular offense by a court order. See G. L. c. 276, §§ 100I, 100J, 100K (setting forth statutory conditions and exclusions). Where a criminal record is expunged by order of the court, the clerk of the court where the criminal record was created and the commissioner of DCJIS must expunge the records within their custody and "order all criminal justice agencies to expunge all publicly available police logs." G. L. c. 276, § 100L (a). But the records within the district attorneys' databases are not included in this statutory directive. In fact, the sealing statute does not require that a prosecutor be notified of the

subsequent sealing of a case he or she prosecuted.  See G. L. c. 276, §§ 100A, 100C.

With respect to the records request here, for cases that have already been sealed or expunged, the production of docket numbers presents no threat.  If the Globe were to search a docket number in the Trial Court's public Internet portal, it would receive a message that no record exists -- protecting the identity of the criminal defendant in that case.  However, if the record produced by the district attorneys has not yet been sealed or expunged, the Globe would be able to obtain the name of the criminal defendant through the docket number and learn, among other things, the nature of the offense and the disposition of the case.  And the Globe would still retain this information even if the case were subsequently sealed or expunged.

This access to identifiable information likely would not present a serious threat to the legislative purpose of the sealing and expungement statutes if the data request concerned a single defendant or a single case.  After all, if the Globe obtains a single court record from a court house before that case is sealed, the Globe may retain that information even if the defendant were subsequently to seal the case.  But where the public records request, as here, seeks twenty-three categories of information for every case in the district attorneys'

databases, the concern that the request will diminish the effectiveness of a subsequent sealing or expungement -- and undermine the Legislature's purpose in promulgating the sealing and expungement statutes -- is far more significant.

We have recognized in a different context the potential danger to privacy that can emerge from the compilation of vast amounts of personal data. See Boston Globe Media Partners, LLC v. Department of Pub. Health, 482 Mass. 427, 440 (2019) (Department of Pub. Health).[8] We have also recognized that the public records law does not distinguish among requesters or permit an inquiry "into the requestor's purpose for seeking a particular record before determining whether to release it." People for the Ethical Treatment of Animals, Inc. v. Department of Agric. Resources, 477 Mass. 280, 290 n.12 (2017). If the Globe is entitled to these databases through the public records law, individuals and businesses that seek to gather and organize this data for profit, such as those who sell data to persons or entities who are conducting background checks, would be equally entitled to access to these databases. "Where criminal records

---

[8] Indeed, in that case, the Globe itself recognized "a greater privacy interest in 'vertical compilations' that 'aggregate information about specific individuals,' such as an individual's criminal record, than in 'horizontal compilations' that 'provide a limited amount of information about many people,' such as a telephone book." Boston Globe Media Partners, LLC v. Department of Pub. Health, 482 Mass. 427, 441 (2019).

are increasingly available on the Internet and through third-party background service providers, criminal history information that is available only briefly to the public through official means can remain available indefinitely, despite subsequent sealing or impoundment." Pon, 469 Mass. at 304, citing Jacobs & Crepet, The Expanding Scope, Use, and Availability of Criminal Records, 11 N.Y.U. J. Legis. & Pub. Pol'y 177, 186-187, 203-208 (2008). See also Department of Pub. Health, 482 Mass. at 437 ("Today's current information may be tomorrow's record protected from public view . . . . To examine the Globe's request in a vacuum is to ignore that an index from the present is entwined with indices from the future").

Because the disclosure of docket numbers could lead to the improper dissemination of criminal history about identifiable individuals, the district attorneys contend that all twenty-three categories of information must, as a necessary implication of the CORI act, be withheld from disclosure. And if the public records request were indivisible and our decision were limited to giving the Globe all it requested or giving it none, we would agree. But we need not, and do not, view the Globe's records request as indivisible -- we may order the segregation and redaction of a narrow portion of the requested records in order to balance the presumption of public access with the protections enacted in CORI reform.

Therefore, we conclude that the extensive database sought here by the Globe is exempt from disclosure as a public record by necessary implication of the CORI act and of the statutes governing sealing and expungement unless the disclosure is redacted to ensure that none of the records are directly or indirectly identifiable to any person.  We also conclude that this can be accomplished only by redacting the category of docket numbers from the database to be produced, because only by redacting the docket numbers can these records be neither directly nor indirectly identifiable to any person.  Where the docket number is redacted, the defendant identification number need not be redacted, because it alone will not permit any individual to be identifiable from either the records produced or from publicly available court records.[9]

We recognize that barring docket numbers from being produced for this records request requires us to distinguish our holding in the Middle District case, which the Superior Court judge relied upon heavily in her decision.  In Middle District, 439 Mass. at 375, the Globe sought information from the Attorney General and each district attorney regarding the docket number,

---

[9] The docket number is thus the "key to the castle." Although the defendant identification number may be used to create a criminal history for an individual, as long as that individual is not identifiable, the defendant identification number may be produced and the history of an unidentified individual may be compiled.

defendant name, municipality, and charge for each criminal case pertaining to municipal corruption involving elected or appointed officials or employees of cities and towns in the Commonwealth.  We concluded that a docket number "falls squarely" within the definition of "chronologically maintained court records of public judicial . . . proceedings" that are "public records" under G. L. c. 6, § 172 (m), and must be disclosed regardless of whether they are in the possession of the court or the district attorney prosecuting the case.  Middle District, supra at 382.  We declared:

> "A record does not cease to be a 'court' record when it is distributed to the parties to a case, here, to the district attorney prosecuting the case.  It retains its original character as a 'court' record, and hence a 'public record,' without regard to which entity has a copy.  Put differently, if the item sought is a court record that could be obtained from the clerk's office, it is a public record, and it may be obtained from any other government official who also happens to have a copy of that same public record."

Id. at 383-383.

But there are important distinctions which preclude the holding in the Middle District case from controlling in this case.  In that case, the Globe's public records request was far more narrow -- it only requested docket numbers associated with a specific type of case and a specific type of defendant.  See Middle District, 439 Mass. at 375.  That request would reveal information about a defendant regarding a specific offense but,

in contrast with the data request in this case, it would not permit the requester, armed with these docket numbers, to compile a criminal history of these defendants based on the other information contained in the data request.

The court itself effectively distinguished the circumstances in the <u>Middle District</u> case from the circumstances in the instant case when it declared:

> "[A]llowing members of the press and the public to obtain docket numbers from the district attorneys does not undermine the purposes of the CORI statute. The CORI statute is intended to protect privacy and to promote the rehabilitation of criminal defendants, recognizing that ready access to a defendant's prior criminal record might frustrate a defendant's access to employment, housing, and social contacts necessary to that rehabilitation. Requests for docket numbers of particular types of cases, not being framed with reference to any named defendant, do not subvert the CORI statute. The CORI statute is not intended to shield officials in the criminal justice system from public scrutiny. Evaluation of a district attorney's performance of necessity involves review of that district attorney's cases, e.g., the types of cases prosecuted, the results achieved, the sentences sought and imposed. Requiring district attorneys to respond to public records requests for docket numbers of particular types of cases prosecuted by their offices facilitates that review without undermining the CORI statute."

<u>Id</u>. at 384. In short, disclosure of the docket numbers in the <u>Middle District</u> case did not undermine the protections or purpose of the CORI statute; disclosure of docket numbers in this case, however, if produced as part of the substantial database of case information sought here, would undermine the CORI statute by allowing the creation of criminal histories of

individuals that would not otherwise be available to members of the general public though a query to DCJIS.  This analysis demonstrates why "a case-by case review is required to determine whether an exemption applies."  Matter of a Subpoena Duces Tecum, 445 Mass. 685, 688 (2006).

We therefore declare that the district attorneys have successfully met their burden of proving that disclosure of the requested information would be exempt from disclosure under exemption (a) of the public records law "by necessary implication" of the CORI act and the sealing and expungement statutes if the requested information were to include docket numbers.  However, if the docket numbers were segregated and redacted from the requested information such that no individual can be directly or indirectly identified from the information obtained by the Globe, the other twenty-two categories of information would not be exempt from disclosure "by necessary implication" of these statutes.

2.  Creation of a new record.  The district attorneys also argue that they do not have to fulfill the Globe's public records request because it would require them to create a computer program to compile information into a new electronic record, a task not required under the public records law.

We have not previously addressed what constitutes the creation of a new record.  The disclosure obligation under the

public records law applies only to information that is in the possession of a governmental entity, regardless of whether its form is paper or electronic.  See G. L. c. 66, § 10 (a) ("A records access officer . . . shall at reasonable times and without unreasonable delay permit inspection or furnish a copy of any public record . . . provided that . . . the public record is within the possession, custody or control of the agency or municipality that the records access officer serves"); G. L. c. 4, § 7, Twenty-sixth (public records are "materials or data, regardless of physical form or characteristics, made or received" by public entity).  Thus, we understand § 10 (a) to mean that a member of the public may not, through a public records request, require an agency or municipality to create new documents that do not already exist. See National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 161-162 (1975) (refusing to order Federal agency to create "explanatory material" through Freedom of Information Act request because would require agency to create new documents); Guide to the Massachusetts Public Records Law, Secretary of the Commonwealth, Division of Public Records (updated Jan. 2017) at 9, 31.  See also Rep. A.G., Pub. Doc. No. 12, at 165 (1977) (public records law generally does not require boards to prepare lists of public information, but only requires that they permit inspection and provide copies of records in their possession).

But where public records are in electronic form, as they increasingly are and will be, a public records request that requires a government entity to search its electronic database to extract requested data does not mean that the extracted data constitute the creation of a new record under the public records law.  This interpretation of the public records law is supported by the regulations promulgated by the supervisor, who is required to adopt regulations to implement the public records law.  See G. L. c. 66, § 1.  Under those regulations, when a governmental entity is designing or acquiring an electronic record keeping system or database, it "shall ensure, to the extent feasible" that it "allows for information storage and retrieval methods permitting retrieval of public portions of records to provide maximum public access."  950 Code Mass. Regs. § 32.07(1)(e)(2) (2017).  The regulations declare:

> "[F]urnishing a segregable portion of a public record shall not be deemed to be creation of a new record.  This applies to a responsive record in the form of an extract of existing data, as such data exists at the time of the request and is segregable from nonresponsive and exempt data."

950 Code Mass. Regs. § 32.07(1)(f).

The duly promulgated regulations of the supervisor "are presumptively valid and 'must be accorded all the deference due to a statute.'"  Craft Beer Guild, LLC v. Alcoholic Beverages Control Comm'n, 481 Mass. 506, 520 (2019), quoting Pepin v.

Division of Fisheries & Wildlife, 467 Mass. 210, 221 (2014).
"The burden of demonstrating invalidity rests squarely on the
party challenging the regulation," Craft Beer Guild, LLC, supra,
which here are the district attorneys, and they have not cited
the regulation or argued that it "is contrary to the plain
language of the [public records] statute and its underlying
purpose." Massachusetts Teachers' Retirement Sys. v.
Contributory Retirement Appeal Bd., 466 Mass. 292, 301 (2013),
quoting Duarte v. Commissioner of Revenue, 451 Mass. 399, 408
(2008).

Federal courts, in interpreting the Freedom of Information
Act (FOIA), 5 U.S.C. §§ 552 et seq., have also held that
electronic database searches do not involve the creation of new
records. See National Sec. Counselors v. Central Intelligence
Agency, 898 F. Supp. 2d 233, 270 (D.D.C. 2012) ("In responding
to a FOIA request for 'aggregate data,' . . . an agency need not
create a new database or reorganize its method of archiving
data, but if the agency already stores records in an electronic
database, searching that database does not involve the creation
of a new record. Likewise, sorting a pre-existing database of
information to make information intelligible does not involve
the creation of a new record . . ."); People for the Am. Way
Found. v. United States Dep't of Justice, 451 F. Supp. 2d 6, 14

(D.D.C. 2006).  See also Yeager v. Drug Enforcement Admin., 678
F.2d 315, 321 (D.C. Cir. 1982).  As one Federal court reasoned:

> "[S]orting a pre-existing database of information to make
> information intelligible does not involve the creation of a
> new record because . . . computer records found in a
> database rather than a file cabinet may require the
> application of codes or some form of programming to
> retrieve the information. . . . Sorting a database by a
> particular data field (e.g., date, category, title) is
> essentially the application of codes or some form of
> programming, and thus does not involve creating new records
> or conducting research -- it is just another form of
> searching that is within the scope of an agency's duties in
> responding to" public records requests" (quotations,
> citation and alteration omitted).

National Sec. Counselors, supra at 270.

Several State courts have also held that conducting a query
in an electronic database does not constitute the creation of a
new record for purposes of their States' public records laws.
See, e.g., American Civ. Liberties Union of Ariz. v. Arizona
Dep't of Child Safety, 240 Ariz. 142, 148 (Ct. App. 2016);
Commonwealth of Pa., Dep't of Envtl. Protection v. Cole, 52 A.3d
541, 547 (Pa. Commw. Ct. 2012); Public Employees' Retirement
Sys. of Nev. v. Nevada Policy Research Inst., Inc., 134 Nev.
669, 676-678 (2018).

A records custodian is obligated to provide access to
existing files, "regardless of physical form or characteristics"
(emphasis added).  G. L. c. 4, § 7, Twenty-sixth.  If public
records are maintained in an electronic database, they must be
searchable and accessible in a reasonable and useable format so

as not to undermine the purpose of the public records law. In a world in which records and information are increasingly stored in electronic databases, a public record that would otherwise be subject to the public records law "does not become immune from production simply by virtue of the method the [public entity] employs to catalogue the document," or track the information. American Civ. Liberties Union of Ariz., 240 Ariz. at 148, quoting Lake v. Phoenix, 220 Ariz. 472, 481 (Ct. App.), rev'd in part, 222 Ariz. 5147 (2009).

Here, the requested information already exists in the district attorneys' databases, which contain certain data fields for each case.[10] Other district attorneys and the Attorney General, with comparable databases, have already complied with the Globe's records request, so we know it is possible. The Globe's request, as limited by this decision, requires the district attorneys to segregate and redact from disclosure the category of docket numbers, but otherwise the district attorneys need only provide a copy of preexisting data fields as requested. We conclude that the segregation and extraction of

---

[10] That is not to say that every case in each database will contain information in every field requested. For example, with respect to the collection of data concerning the defendant's race and ethnicity, the district attorneys' practices vary. But to the extent that the information exists for each case, and it already has been entered into the district attorneys' databases, it must be produced.

the requested information from the existing fields in the district attorneys' databases is not the creation of a new record but is instead the type of data recovery that is expected in a digital world under the public records law. To be sure, we do not underestimate the burden on staff time and resources that the Globe's records request may impose on the district attorneys, given the breadth of its scope, but the district attorneys may assess a reasonable fee for the actual cost of producing the requested information, consistent with G. L. c. 66, § 10 (d).

Conclusion. We affirm so much of the judgment as orders the district attorneys within ninety days to produce the requested information from their case management databases, except for the docket numbers of each case, which shall be segregated and redacted from the information provided. We also affirm so much of the judgment as declares that the categories of requested data are public records under the public records law and are not exempt from disclosure, but only to the extent that these records do not directly or indirectly identify any defendant, which requires the segregation and redaction of docket numbers from the records to be produced.

So ordered.